**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEANNE McKIVITZ and ROBERT McKIVITZ,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-1247** |
| | ) | |
| **TOWNSHIP OF STOWE, TOWNSHIP OF STOWE ZONING BOARD OF ADJUSTMENT, and WILLIAM J. SAVATT, individually and as the Stowe Township Code Enforcement Officer,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I.  Introduction

Before the Court for disposition are the Plaintiffs' MOTION FOR PARTIAL SUMMARY JUDGMENT (*Document No. 28*), with their supporting brief and exhibits (*Document Nos. 29-37*), the MOTION FOR SUMMARY JUDGMENT filed by Defendants William J. Savatt and the Township of Stowe (*Document No. 38*), with their supporting brief, appendix and concise statement of material facts (*Document Nos. 39 & 40*), the MOTION FOR SUMMARY JUDGMENT filed by Defendant Township of Stowe Zoning Board of Adjustment (*Document No. 41*), with its supporting brief, appendix and concise statement of material facts (*Document Nos. 42-43, 45-46*), the Plaintiffs' omnibus response to the Defendants' motions for summary judgment (*Document No. 50*), and their supporting appendix and exhibits (*Document Nos. 51-56*), the Defendants' briefs in opposition to the Plaintiffs' motion for partial summary judgment (*Document Nos. 53 & 57*), the responsive concise statement of material facts filed by Defendants William J. Savatt and the Township of Stowe (*Document No. 54*), and additional exhibits submitted by Defendant Township of Stowe Zoning Board of Adjustment (*Document No. 58*).[1]  For the reasons that follow, the Plaintiffs' motion for partial summary judgment (*Document No. 28*) will be denied, and the Defendants' motions for summary judgment (*Document Nos. 38 & 41*) will be granted.

---

[1] The Plaintiffs have not filed a concise statement of material facts.

## II.  Background

Plaintiffs Jeanne and Robert McKivitz ("Mrs. McKivitz" and "Mr. McKivitz," respectively, or the "Plaintiffs," collectively) reside in McKees Rocks, Pennsylvania.  ECF No. 1 at ¶ 9.  On November 23, 1998, Mr. and Mrs. McKivitz purchased a dwelling located at 1119 Charles Street in Stowe Township, Pennsylvania.  *Id.* at ¶ 14.  The property is located in an area of Stowe Township that is classified as an "R-1" residential district under the applicable zoning ordinances.  *Id.* at ¶ 15.  Ordinance No. 912 provides that R-1 districts should consist primarily of "single family homes on individual lots with customary residential accessory uses."[2]  ECF No. 40-1 at 9.  The term "family" is defined as "[o]ne or more persons occupying a dwelling unit and maintaining a single housekeeping unit."  *Id.* at 4.

On or around June 1, 2007, Mr. and Mrs. McKivitz leased the dwelling to Carmella Gasbarro ("Gasbarro") and four other females, all of whom were recovering from drug or alcohol addiction.  ECF No. 1 at ¶ 18.  Each of these individuals had previously received treatment for drug or alcohol addiction in a "half-way house" or similar residential treatment facility.  *Id.* at ¶ 19.  Mr. and Mrs. McKivitz intended to operate their property as a "three-quarter house," which they considered to be a "single-family dwelling."  *Id.* at ¶¶ 20-21.  The individuals residing in the dwelling were required to remain free of drug and alcohol abuse.  *Id.* at ¶ 22.  Urine tests were administered to ensure compliance with this policy.  ECF No. 40-1 at 29.  Gasbarro served as the "house supervisor" during her stay.  ECF No. 50-4 at 8.  In return for her services, she received a $100.00-per-month discount in the amount of her rent.  *Id.*  She was charged only $300.00 per month to stay at the facility, while the other residents paid $400.00 per month.  *Id.*

In a letter to Mr. McKivitz dated June 12, 2007, Ordinance Officer William J. Savatt ("Savatt") stated as follows:

> Mr. McKivitz, this letter is to inform you there are two violations of Township ordinances regarding your property at 1119 Charles St.
>
> First, you are running a rooming house at 1119 Charles in an area of the Township not zoned for such a use.  Your house is in an R-1 single family residential area.

---

[2] The record indicates that Ordinance No. 912 was adopted on July 10, 2007.  ECF No. 40-1 at 2.

> Second, you have not submitted a rental form for the persons living at 1119 Charles as required by Township ordinance 791, Ch 11 Sec 201-1, and 202.
>
> Both issues have been confirmed by my conversation with your tenant Stephanie Palkey, and Chief Marciws [sic] conversation with you.
>
> You have ten days from the receipt of this letter to: cease operation of the rooming house or apply for a zoning variance, and you must submit the proper rental form to the Township. If you fail to comply with these issues within the time specified, citations will be issued.

ECF No. 40-3 at 1. Stephanie Palkey ("Palkey") was apparently one of the individuals who had been residing at the facility. Ordinance No. 912 defines the term "rooming or boarding house" as "[a] residential building other than a hotel in which part or parts are kept, used, or held out to be a place where sleeping accommodations are offered for hire for three or more persons." ECF No. 40-1 at 8. An individual is required to obtain a "Certificate of Occupancy indicating compliance with the provisions of" Ordinance No. 912 prior to changing "the use of an existing building, structure, water body or land area."[3] *Id.* at 23.

Mr. McKivitz apparently spoke with Savatt and argued that the property was being used as a single-family dwelling, and that no occupancy permit was needed. In a written notice dated June 13, 2007, Savatt informed Mr. McKivitz that both an occupancy permit and a building inspection were necessary. ECF No. 40-3 at 2. On August 20, 2007, Savatt filed citations against Mr. and Mrs. McKivitz for collecting rent without having filed a notice of occupancy. *Id.* at 3-4. The charges were ultimately dismissed after a hearing conducted before Magisterial District Judge Tara Smith. ECF No. 1 at ¶¶ 40-41.

Mr. and Mrs. McKivitz applied for a "Certificate of Occupancy" on August 23, 2007, proposing that their property be used as a "three-quarter house" for "disabled individuals." ECF No. 40-3 at 13. Savatt denied the request on October 22, 2007. *Id.* at 14. In a letter to Mr. and Mrs. McKivitz explaining the reasons for his decision, Savatt stated that a "three-quarter house" was not permitted in an R-1 district. *Id.*

---

[3] No "Certificate of Occupancy" is required where a "different owner" uses a piece of property in the same manner that it had previously been used. ECF No. 40-1 at 23.

On November 21, 2007, Mr. and Mrs. McKivitz appealed Savatt's decision to Stowe Township's Zoning Board of Adjustment (the "Board"). ECF No. 40-3 at 15. In a written attachment to their formal "notice of appeal," they declared:

> The property owner appeals from the determination of the Ordinance Officer and asserts the following reasons for approval:
>
> Contrary to the determination of the Zoning Officer a three-quarter house is permitted in the R-1 residential area;
>
> Use of the property, a single family dwelling, as a three-quarter house does not constitute a change of use for the subject property;
>
> The Zoning Officer erred in finding Stowe Township Ordinance 912 is the applicable ordinance in determining the use of the property;
>
> The Zoning Officer erred in finding the Zoning Ordinance in force in Stowe Township on and before July 9, 2007, was not applicable to the present use of this property by the Owners;
>
> Owners are not required to obtain a zoning certificate from the Zoning Officer because the current use of the property predates the adoption of Stowe Township Ordinance 912;
>
> The determination of the Zoning Officer deprives the Owners of the use and enjoyment of their property without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and violates their rights as established under Article 1, §§ 1, 9 of the Pennsylvania Constitution and because it is an *ex post facto* application of the Ordinance in violation of Article 1, § 17 of the Constitution of the Commonwealth of Pennsylvania.

*Id.* at 16. As this language illustrates, the only federal basis for the appeal referenced by Mr. and Mrs. McKivitz was their contention that the Due Process Clause of the Fourteenth Amendment prohibited Stowe Township from applying Ordinance No. 912 retroactively.[4]

The Board conducted a hearing on January 17, 2008. ECF No. 40-2 at 1-140. Mr. McKivitz, Gasbarro and Savatt all testified at the hearing. *Id.* In a decision dated February 21, 2008, the Board affirmed Savatt's decision to deny the request for a "Certificate of Occupancy."

---

[4] Although Mr. and Mrs. McKivitz referenced the Due Process Clause of the Fifth Amendment as a basis for their appeal, that constitutional provision applies only to the Federal Government. *Thompson v. Wagner*, 631 F.Supp.2d 664, 671 (W.D.Pa. 2008). The Due Process Clause of the Fourteenth Amendment, which provides that "No *State* shall . . . deprive any person of life, liberty, or property, without due process of law," is the sole source of "due process" protection from *state* action. U.S. CONST., AMEND. XIV, § 1 (emphasis added).

ECF No. 40-3 at 17. Although Mr. and Mrs. McKivitz had not filed a formal request for a variance, the Board treated their appeal as an implicit request for a variance and proceeded to deny it. *Id.* at 18, 19-22. In denying the implicit request for a variance, the Board noted that counsel for Mr. and Mrs. McKivitz had argued at the hearing that the residents of the facility were "disabled or handicapped," and that they needed the "reasonable accommodation" of a "three-quarter house" in order to live in an R-1 district. *Id.* at 20. The Board determined that the facility, as used by Mr. and Mrs. McKivitz, constituted a "group residence," which was defined as follows:

> A facility located in a residential area, which provides room, board and specialized services to six or fewer unrelated persons, such as children (under 18 years), handicapped or elderly (over 60 years) individuals. The individuals must be living together as a single housekeeping unit with one or more adults providing qualified, 24-hour supervision. The group residence may be operated by a governmental agent, certified agent or nonprofit corporation. This category shall not include facilities operated by or under the jurisdiction of any governmental bureau of corrections or similar institution.

ECF No. 40-1 at 6-7; Doc. No. 40-3 at 20-22. According to the Board, a group residence could be permitted as a "conditional use" in an R-2 district, but not in an R-1 district. *Id.* The Board denied the request for a variance after finding that Mr. and Mrs. McKivitz had not satisfied the criteria for obtaining a variance under the applicable zoning ordinance.[5] *Id.*

On March 24, 2008, Mr. and Mrs. McKivitz appealed the Board's decision to the Court of Common Pleas of Allegheny County, Pennsylvania. ECF No. 1 at ¶ 58; ECF No. 40-3 at 23-34. They commenced this action against Stowe Township, the Board and Savatt on September 8, 2008, alleging violations of the Fair Housing Act of 1968 ("FHA") [42 U.S.C. § 3601 *et seq.*], the Rehabilitation Act of 1973 [29 U.S.C. § 701 *et seq.*], the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*], the Equal Protection and Due Process Clauses of the

---

[5] The ordinance listing the criteria for determining whether a variance should be granted is not contained in the record. In its decision, the Board described the applicable standard as follows:

> Pursuant to Article Nine, Section 8, Subsection C. 2, the Board may grant a variance, provided all of the following are found: a. there are unique physical circumstances or conditions specific to the property, creating an unnecessary hardship; b. that because of the property's circumstances or conditions, the property cannot reasonably be used in accordance with the strict requirements of the Ordinance; c. that the unnecessary hardship has not been created by the appellant; d. that the variance, if granted, would not alter the essential character of the neighborhood; and, e. the variance, if granted, will represent the minimum variance.

ECF No. 40-3 at 20-21. The Court derives its understanding of the applicable ordinance from this portion of the Board's decision.

Fourteenth Amendment to the United States Constitution, and Article 1, § 26, of the Pennsylvania Constitution.[6]  ECF No. 1 at ¶¶ 80-105.  On June 21, 2010, Mr. and Mrs. McKivitz filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 28.  Stowe Township and Savatt filed a motion for summary judgment four days later. ECF No. 38.  A separate motion for summary judgment was filed by the Board.  ECF Nos. 41 & 44.  These motions are the subject of this memorandum opinion.

## III.    Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted.  FED. R. CIV. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in his or her favor.  *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir. 2007).  The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact.  *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).  A dispute is "genuine" if the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party.  *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  Where the non-moving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the non-moving party's burden of proof.  *Celotex Corp.*, 477 U.S. at 322.  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories in order to show that there is a genuine issue of material fact for trial. *Id.* at 324.  The non-moving party cannot defeat a well-supported motion for summary judgment

---

[6] The Plaintiffs' FHA, Equal Protection Clause, Due Process Clause and state constitutional claims are asserted against Savatt, Stowe Township and the Board. ECF No. 1 at ¶¶ 80-85, 97-105.  Their Rehabilitation Act claims are asserted only against Stowe Township, while their ADA claims are asserted against both Stowe Township and the Board.  *Id.* at ¶¶ 86-96.

by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV.  Discussion

## A.  The Statutory Claims

The Plaintiffs' statutory claims arise under the FHA, the Rehabilitation Act and the ADA. ECF No. 1 at ¶¶ 80-96.  The FHA, as originally enacted in 1968, prohibited discrimination in the sale or rental of housing against an individual because of his or her race, color, religion or national origin.  Pub. L. No. 90-284, § 804; 82 Stat. 73, 83 (1968).  Congress amended the FHA in 1974 to prohibit similar forms of discrimination against an individual because of his or her sex.  Pub. L. No. 93-383, § 808; 88 Stat. 633, 729 (1974).  Section 6 of the Fair Housing Amendments Act of 1988 ("FHAA") amended the FHA to add subsection (f) to 42 U.S.C. § 3604.  Pub. L. No. 100-430, § 6; 102 Stat. 1619, 1620-1621 (1988).  The relevant provisions of that subsection provide:

> **§ 3604.  Discrimination in the sale or rental of housing and other prohibited practices.**
> As made applicable by section 803 [42 U.S.C. § 3603] and except as exempted by sections 803(b) and 807 [42 U.S.C. §§ 3603(b), 3607], it shall be unlawful—
>
> ***
> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
> > (A) that buyer or renter[;]
> > (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
> > (C) any person associated with that person.
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
> > (A) that person; or
> > (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> > (C) any person associated with that person.
> (3) For purposes of this subsection, discrimination includes—
>
> ***
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . .

42 U.S.C. § 3604(f).[7]  The FHA's preemption provision, which is codified at 42 U.S.C. § 3615, provides that "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under [the FHA] shall to that extent be invalid."[8]  42 U.S.C. § 3615.

Section 504 of the Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  The term "program or activity" includes all operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . ."  29 U.S.C. § 794(b)(1)(A).  In a letter to the Plaintiffs' counsel dated June 9, 2010, Stowe Township's solicitor stated that Stowe Township had received federal financial assistance in 2007 and 2008.  ECF No. 50-4 at 10.  The Rehabilitation Act requires recipients of federal funding to reasonably accommodate the needs of disabled individuals to the extent necessary to enable such individuals to enjoy the benefits of the relevant "program or activity."  *Chedwick v. UPMC*, 619 F.Supp.2d 172, 185-187 (W.D.Pa. 2007).

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The term "public entity" includes "any State or local government," as well as "any department, agency, special purpose district, or other

---

[7] The term "dwelling" is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof."  42 U.S.C. § 3602(b).  It is undisputed that the "building" or "structure" at issue in this case is a "dwelling" within the meaning of the FHA.  *Lakeside Resort Enterprises, LP v. Board of Supervisors of Palmyra Township*, 455 F.3d 154, 156-160 (3d Cir. 2006).

[8] It is axiomatic that Congress has the power to preempt state and local laws.  The Supremacy Clause, which is contained in Article VI of the Constitution, provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.

U.S. CONST., ART. VI.  This constitutional provision unambiguously provides Congress with the authority to preempt state and local laws of the kind at issue in this case.  Because the FHA contains "an express provision for preemption," there can be no doubt that Congress intended to preempt any state or local law "that purports to require or permit any action that would be a discriminatory housing practice . . . ."  *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); 42 U.S.C. § 3615.

instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131(1)(A)-(B). The term "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

## 1.    The FHA's Exemptions

Before reaching the merits of the Plaintiffs' claims, the Court must address some preliminary issues raised by the Defendants. The applicable language of 42 U.S.C. § 3603(b)(1) provides that nothing in § 3604 (other than subsection (c))[9] shall apply to "any single-family house sold or rented by an owner," provided "[t]hat such private individual owner does not own more than three such single-family houses at any one time . . . ." 42 U.S.C. § 3603(b)(1).[10] The Defendants argue that the Plaintiffs' claims under the FHA cannot proceed because § 3603(b)(1)'s exemption applies to the facility at issue in this case. ECF No. 53 at 3-4.

The argument raised by the Defendants is lacking in merit for two reasons. During the course of a deposition conducted on November 3, 2009, Mr. McKivitz testified that he owned twelve residences, all of which were occupied by tenants. ECF No. 54-3 at 10. Given this testimony, the Defendants cannot establish that Mr. and Mrs. McKivitz owned three or less single-family houses when the Board issued its decision. Furthermore, the Defendants' argument would most likely fail even if the Plaintiffs had owned only a single residence during the relevant period of time. The FHA must be broadly construed to effectuate its purpose of providing for "fair housing throughout the United States." 42 U.S.C. § 3601. For the same reason, the FHA's exemptions must be *narrowly* construed. *Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 181 (1st Cir. 1994); *Whisby-Myers v. Kiekenapp*, 293 F.Supp.2d 845, 851 (N.D.Ill. 2003). The FHA prohibits both individuals and governmental entities from engaging in proscribed forms of discrimination. *Dr. Gertrude A. Barber Center, Inc. v. Peters Township*, 273 F.Supp.2d 643, 651 (W.D.Pa. 2003); *Spieth v. Bucks County*

_____

[9] Subsection (c) makes it unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). This statutory provision is not implicated by the facts in the instant case.

[10] The Court need not consider the remaining criteria listed in subsection (b)(1) to dispose of the specific argument raised by the Defendants in this case. 42 U.S.C. § 3603(b)(1).

*Housing Authority*, 594 F.Supp.2d 584, 592 (E.D.Pa. 2009). The statutory provision relied upon by the Defendants was designed to exempt *individuals* who own three or less "single-family houses" from the strictures of the FHA, not to shield *governmental entities* from FHA claims based on generally-applicable zoning ordinances merely because such claims happen to involve "single-family houses" owned by such individuals. *Trovato v. City of Manchester*, 992 F.Supp. 493, 497, n. 2 (D.N.H. 1997)("The clause quite clearly was intended to protect owners of single family homes from being subject to the requirements of the FHAA, and not, as defendant argues, to protect local governments whose ordinances are applied in a manner that discriminates against persons with disabilities."). For these reasons, the Defendants cannot rely on § 3603(b)(1) to defeat the Plaintiffs' FHA claims.

Pursuant to 42 U.S.C. § 3607(b)(1), "[n]othing in [the FHA] limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1). Because Ordinance No. 912 defines the term "rooming or boarding house" as "[a] residential building other than a hotel in which part or parts are kept, used or held out to be a place where sleeping accommodations are offered for hire for three or more persons," the Defendants point out that the Plaintiffs were free to rent their facility to one or two disabled individuals under Stowe Township's zoning scheme. ECF No. 39 at 20-21; ECF No. 40-1 at 8. Nevertheless, the language of Ordinance No. 912 does not constitute a "restriction[] regarding the maximum number of occupants permitted to occupy a dwelling" within the meaning of § 3607(b)(1). Ordinance No. 912 defines the term "family" as "[o]ne or more persons occupying a dwelling unit and maintaining a single housekeeping unit." ECF No. 40-1 at 4. Where a group of individuals constitutes a "family," there is no limit on how many individuals can live together in an R-1 district. In *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728-737, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995), the United States Supreme Court construed § 3607(b)(1)'s exemption to apply only where a governmental restriction limits "the maximum number of occupants permitted to occupy a dwelling" without regard to other factors, such as whether the occupants of the dwelling constitute a "family." Speaking through Justice Ginsburg, the Supreme Court explained:

> Section 3607(b)(1)'s language—"restrictions regarding the maximum number of occupants permitted to occupy a dwelling"—surely encompasses maximum occupancy restrictions. But the formulation does not fit family composition rules typically tied to land-use restrictions. In sum, rules that cap the total number of

occupants in order to prevent overcrowding of a dwelling "plainly and unmistakably," see *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 89 L.Ed. 1095, 65 S.Ct. 807 (1945), fall within § 3607(b)(1)'s absolute exemption from the FHA's governance; rules designed to preserve the family character of a neighborhood, fastening on the composition of households rather than on the total number of occupants living quarters can contain, do not.

*City of Edmonds*, 514 U.S. at 734-735 (footnotes omitted). During the course of the proceedings before the Board, the Plaintiffs consistently maintained that the disabled women residing in the "three-quarter house" were living as a single "family." ECF No. 40-3 at 16. Although the Board ultimately concluded otherwise, it is undisputed that Ordinance No. 912 does not cap the total number of individuals who may live together as a "family." ECF No. 40-1 at 4. Given the narrow construction of § 3607(b)(1) adopted by the Supreme Court in *City of Edmonds*, the Defendants cannot invoke that statutory exemption to evade the strictures of the FHA.[11]

## 2. Standing

In order to satisfy the standing requirements of Article III of the United States Constitution, a plaintiff must show that he or she has personally "suffered some actual or threatened injury as a result of the putatively illegal conduct of [a] defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The Supreme Court has generally construed the FHA to permit any individual who can satisfy the minimal prerequisites of Article III to assert a statutory claim for discrimination in the sale or rental of housing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The language of the FHA permitting the Plaintiffs to commence this action against the Defendants provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice or breach." 42 U.S.C. § 3613(a)(1)(A). As the United States Court of Appeals for the Third Circuit observed in *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1282, n. 7 (3d Cir. 1993), this statutory language "allows anyone sustaining an actual injury from an alleged discriminatory housing practice to commence a suit." Consequently, individuals such as Mr. and Mrs. McKivitz have standing to pursue

---

[11] It is not clear whether the Board is attempting to rely on § 3607(b)(1) to defeat the Plaintiffs' FHA claims. ECF No. 41-1 at 17-18.

claims under the FHA. *Dr. Gertrude A. Barber Center, Inc.*, 273 F.Supp.2d at 651. The Court does not understand the Defendants to argue otherwise.

Although the Defendants do not appear to question the Plaintiffs' standing to seek redress under the FHA, they contend that the Plaintiffs lack standing to proceed with their claims under the Rehabilitation Act and the ADA. ECF No. 39 at 8-11. In *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court explained that an "association" has standing to bring a suit *on behalf of its members* where "its members would otherwise have standing to sue in their own right," the interests that the association seeks to protect are "germane" to its purpose, and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." The Defendants apparently believe that Mr. and Mrs. McKivitz lack standing to sue under the Rehabilitation Act and the ADA because they are not an "association." In support of their position, the Defendants rely on the decision of the United States Court of Appeals for the Third Circuit in *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399 (3d Cir. 2005). ECF No. 39 at 9-11.

In *Addiction Specialists*, the Court of Appeals explained that the reasoning in *Hunt* limiting "pure associational standing" to instances where an association seeks to protect interests that are germane to its purpose, or requests relief that does not require the participation of individual members, is inapplicable where a third party seeks to redress *its own alleged injuries* rather than those of *its clients*. *Addiction Specialists*, 411 F.3d at 406-407. In their complaint, the Plaintiffs allege that, because of the Defendants' actions, they have been "compelled to divert resources, energy and funds from other activities to their efforts to assist persons with disabilities." ECF No. 1 at ¶ 74. They contend that they have suffered, and will continue to suffer, "irreparable injury" as a result of the Defendants' conduct. *Id.* at ¶ 77. Since they seek to redress *their own injuries* rather than the injuries allegedly sustained by the disabled individuals with whom they are associated, the Plaintiffs need not satisfy the criteria discussed in *Hunt* to proceed with their claims under the Rehabilitation Act and the ADA. *Addiction Specialists*, 411 F.3d at 407.

*Addiction Specialists* undermines (rather than helps) the Defendants' argument for another reason. In determining that an "entity" had standing to assert claims under the Rehabilitation Act and the ADA, the Court of Appeals specifically relied on the language of 28 C.F.R. § 35.130(g), which provides:

A public entity shall not exclude or otherwise deny equal services, programs, or activities to an *individual* or entity because of the known disability of an individual with whom the *individual* or entity is known to have a relationship or association.

28 C.F.R. § 35.130(g)(emphasis added). Although the Court of Appeals emphasized the word "entity" in order to establish that an association had standing to seek redress under the Rehabilitation Act and the ADA, the language of the regulation clearly places *individuals* who associate with disabled persons on the same footing as *entities* which associate with disabled persons. *Addiction Specialists*, 411 F.3d at 405-406. The reasoning employed by the Court of Appeals in *Addiction Specialists* provides no support whatsoever for the argument advanced by the Defendants in this case.

The Rehabilitation Act provides a remedy "to any person aggrieved by any act or failure to act" by a recipient of federal financial assistance. 29 U.S.C. § 794a(a)(2). Title II of the ADA provides a remedy "to any person alleging discrimination on the basis of disability in violation [thereof]." 42 U.S.C. § 12133. Statutory language of this kind evinces a congressional intent to define an individual's standing to assert statutory claims as broadly as is permitted under Article III. *Addiction Specialists*, 411 F.3d at 407; *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 334 (6th Cir. 2002); *Innovative Health Systems v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997). Since the Plaintiffs have standing under Article III to assert their claims under the FHA, they also have standing to pursue their claims under the Rehabilitation Act and the ADA.

### 3.    Quasi-Judicial Immunity

The Board argues that it enjoys absolute immunity from the Plaintiffs' claims because of its quasi-judicial functions. ECF No. 41-1 at 19-21. In support of its position, the Board relies on the standards articulated by the Supreme Court in *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), for determining whether an individual's functions are sufficiently "judicial" or "adjudicatory" in nature to warrant the extraordinary protection of absolute immunity. There is no need for the Court to consider whether the Board is a "judicial" or "adjudicatory" body, since it is not entitled to absolute immunity in any event.

In their complaint, the Plaintiffs assert official-capacity claims against *the Board*. ECF No. 1 at ¶¶ 2, 11. They do not assert personal-capacity claims against *members of the Board*.[12] Personal immunities are not available in an official-capacity action involving claims against an entity *qua* entity. *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Quasi-judicial immunity only extends to an *individual* sued in his or her *personal* capacity. *VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007); *Alkire v. Irving*, 330 F.3d 802, 810-811 (6th Cir. 2003); *Turner v. Houma Municipal Fire & Police Service Board*, 229 F.3d 478, 482-486 (5th Cir. 2000); *Bass v. Attardi*, 868 F.2d 45, 51 (3d Cir. 1989). Since the Plaintiffs have not sued any *members* of the Board in their personal capacities, the Board's argument concerning quasi-judicial immunity can be rejected without further inquiry regarding the standards applicable under *Butz* and *Cleavinger*.

**4.    The Effect of the Proceedings Before the Board**

Under Pennsylvania law, the Board has jurisdiction to entertain both "[s]ubstantive challenges to the validity of any land use ordinance" in Stowe Township and "[a]ppeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot." 53 PA. STAT. § 10909.1. The Board argues that the Plaintiffs pursued their case as an appeal from Savatt's decision denying their request for a "Certificate of Occupancy" rather than as a substantive challenge to the validity of Ordinance No. 912, thereby limiting the Board's ability to "reasonably accommodate" the needs of their disabled tenants. ECF No. 41-1 at 4-14. The Board further contends that even if the Plaintiffs had challenged Ordinance No. 912 on substantive grounds, only the legislative authorities of Stowe Township would have had the legal competence to enact the amendments necessary to ensure compliance with the FHA.[13] *Id.* at 13-14. According to the Board, the only avenue of relief available to the Plaintiffs is their appeal to the Court of Common Pleas. *Id.* at 13.

The Board's argument is unpersuasive for several reasons. First of all, the Plaintiffs did contend that Ordinance No. 912 could not be constitutionally applied to them, since it had not

---

[12] Savatt is the only individual who has been sued in his personal capacity. ECF No. 1 at ¶ 12.

[13] The Board bases its argument on 53 PA. STAT. § 10916.1(c)(5), which provides that "[i]f a challenge heard by a zoning hearing board is found to have merit, the decision of the zoning hearing board shall include recommended amendments to the challenged ordinance which will cure the defects found."

been enacted until July 10, 2007. ECF No. 40-3 at 16. They maintained that the retroactive application of the ordinance constituted violations of the Due Process Clause of the Fourteenth Amendment and three separate provisions of the Pennsylvania Constitution's Declaration of Rights.[14] *Id.* Although the crux of the Plaintiffs' argument was that the disabled individuals living in their "three-quarter house" were a single "family," and that this use of the property was in conformity with Ordinance No. 912, their alternative arguments concerning the United States and Pennsylvania Constitutions were clearly *substantive* challenges to the ordinance (as it had been construed and applied by Savatt). During the hearing conducted on January 17, 2008, the Plaintiffs' counsel put the Board on notice that the Plaintiffs were relying, at least in part, on their rights under the FHA, the Rehabilitation Act and the ADA. ECF No. 40-2 at 109-125. In its opinion affirming Savatt's decision, the Board expressly referenced the arguments which had been raised by the Plaintiffs' counsel concerning the application of these statutes. ECF No. 40-3 at 20. While the Plaintiffs never formally applied for a variance (because they did not believe that one was necessary), the Board treated their argument as an implicit request for a variance and proceeded to deny it. *Id.* at 18, 20-22. On October 8, 2009, Savatt testified that the Plaintiffs' request for a "Certificate of Occupancy" had been the functional equivalent of a request for a variance. ECF No. 52-2 at 15-16. Having formally *denied* the Plaintiffs' implicit request for a variance, the Board cannot avoid the import of its decision by arguing that no such request had ever been presented in the first place, or by contending that it lacked the authority to grant the request for a variance in any event.

Even if it is assumed that the Plaintiffs did not comply with the relevant niceties of Pennsylvania law, they are entitled to proceed with their claims at this stage. Strict compliance with every applicable law or ordinance is not required in order to enable a plaintiff to assert claims under the FHA, the Rehabilitation Act and the ADA. *Marriott Senior Living Services, Inc. v. Springfield Township*, 78 F.Supp.2d 376, 386 (E.D.Pa. 1999). Under these circumstances, the Plaintiffs were only required to give the Defendants the "initial opportunity" to provide the "reasonable accommodations" allegedly required under federal law. *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment*, 284 F.3d 442, 451 (3d Cir. 2002). They clearly did so in this case. It is of no moment that the Plaintiffs have further avenues of relief available to them under

---

[14] The Plaintiffs do not specifically challenge the retroactive application of Ordinance No. 912 in this action. ECF No. 1.

Pennsylvania law.  As the United States Court of Appeals for the Fourth Circuit explained in *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 602 (4th Cir. 1997), a statutory violation occurs as soon as a request for a federally-mandated "reasonable accommodation" is denied, regardless of whether state law permits the requested relief to be sought in subsequent judicial proceedings.  Accordingly, the Court can consider the merits of the Plaintiffs' claims.

**5.      The Status of the Residents of the "Three-Quarter House"**

The FHA's definition of the term "handicap" is codified at 42 U.S.C. § 3602(h), which provides:

> **§ 3602.  Definitions**
> As used in this title—
>
> ***
> (h) "Handicap" means, with respect to a person—
>> (1) a physical or mental impairment which substantially limits one or more of such person's major life activities,
>> (2) a record of having such an impairment, or
>> (3) being regarded as having such an impairment,
> but such term does not include current, illegal use of or addiction to a controlled substance (as defined in section 102 of the Controlled Substances Act [21 U.S.C. § 802]).

42 U.S.C. § 3602(h).  During the relevant period of time, the Rehabilitation Act defined the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities."  Pub. L. No. 105-220, § 403; 112 Stat. 936, 1101 (1998)(previously codified at 29 U.S.C. § 705(9)(B)).  The ADA defined the term "disability" as follows:

> **§ 12102.  Definitions**
>
> ***
> (2) Disability.  The term "disability" means, with respect to an individual—
>> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>> (B) a record of such an impairment; or
>> (C) being regarded as having such an impairment.

Pub. L. No. 101-336, § 3; 104 Stat. 327, 329-330 (1990)(previously codified at 42 U.S.C. § 12102(2)).  Courts generally consider individuals deemed to be "handicapped" under the FHA to

likewise be "disabled" within the meaning of the Rehabilitation Act and the ADA.[15] *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45-48 (2d Cir. 2002)(conducting a single analysis to determine whether recovering alcoholics were entitled to statutory protection under all three statutes). Therefore, the Court's analysis concerning the issue of "handicap" under the FHA will also be dispositive of the issue of "disability" under the Rehabilitation Act and the ADA.

The Defendants argue that the individuals who were residing in the Plaintiffs' "three-quarter house" during the relevant period of time were not "handicapped" or "disabled" within the meaning of the applicable statutory provisions.[16] ECF No. 53 at 4-6. This argument is grounded in the lack of evidence establishing that the individuals living in the "three-quarter house" were "substantially limited" in one or more of their "major life activities" as a result of their impairments. *Id.* While this argument is not wholly without force, it cannot carry the day under the precise circumstances of this case. As an initial matter, there is no evidence that the residents of the facility were using controlled substances during the period of time at issue. Mr. McKivitz testified that the residents were required to undergo random urine tests in order to verify that they were not using illegal drugs. ECF No. 40-1 at 29. The record contains no

---

[15] The ADA Amendments Act of 2008, which became effective on January 1, 2009, broadened the category of individuals entitled to statutory protection under the ADA and the Rehabilitation Act. Pub. L. No. 110-325, §§ 3-8; 122 Stat. 3553, 3554-3559 (2008). The United States Court of Appeals for the Third Circuit has not determined whether the changes made by the ADA Amendments Act should be applied retroactively. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 501, n. 5 (3d Cir. 2010). Several other federal appellate courts have concluded that the ADA Amendments Act should not be given retroactive effect. *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009); *Thornton v. United Parcel Service, Inc.*, 587 F.3d 27, 35, n. 3 (1st Cir. 2009); *Frederickson v. United Parcel Service Co.*, 581 F.3d 516, 521, n. 1 (7th Cir. 2009); *Lytes v. DC Water & Sewer Authority*, 572 F.3d 936, 942 (D.C. Cir. 2009); *Millholland v. Sumner County Board of Education*, 569 F.3d 562, 565 (6th Cir. 2009); *EEOC v. Agro Distribution LLC*, 555 F.3d 462, 469, n. 8 (5th Cir. 2009). Accordingly, the Court will evaluate the Plaintiffs' claims pursuant to the standards that were applicable as of February 21, 2008, when the Board issued its decision denying the Plaintiffs' implicit request for a variance. ECF No. 40-3 at 17-22. There is no need for the Court to consider whether, in the aftermath of the ADA Amendments Act, some individuals who are "disabled" within the meaning of the ADA and the Rehabilitation Act may not be "handicapped" within the meaning of the FHA.

[16] The Defendants erroneously believe that the Plaintiffs must establish that their tenants were statutorily "handicapped" or "disabled" in order to proceed with their claims under the Equal Protection Clause. ECF No. 53 at 4-6. This belief makes no sense. The meaning of a *constitutional* provision enacted in 1868 cannot be determined by reference to *statutory* provisions enacted more than a century later. Moreover, a plaintiff need not allege "class-based discrimination" in order to state a claim under the Equal Protection Clause. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). Any individual can establish a violation of the Equal Protection Clause by showing that he or she has been intentionally treated differently than similarly-situated individuals, and that this difference in treatment has occurred for no "rational" reason. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). The statutory definitions contained in the FHA, the Rehabilitation Act and the ADA have no bearing on the Plaintiffs' claims under the Equal Protection Clause.

evidence which contradicts this testimony. Consequently, the individuals residing in the facility were not within the FHA's exclusionary language denying statutory protection to those who "currently" use or abuse controlled substances. 42 U.S.C. § 3602(h).

In an affidavit signed on June 21, 2010, Gasbarro made the following statements:

> Prior to moving to the property I suffered from drug and alcohol abuse and was drug and alcohol dependent. I was so impaired by my addictions that I could not function normally in society; was enrolled as an inpatient for treatment, and was released to a half-way house to continue treatment and the road to recovery. I was disabled as the direct result of my addictions and prior drug and alcohol use. While in treatment residence in a "three-quarter" house was suggested as the next step in recovering from my disability. To pursue this next step in my recovery, I became a resident of 1119 Charles Street, a "three-quarter house" owned and operated by Jeanne and Robert McKivitz.

ECF No. 50-4 at 7-8. The Court, of course, is not required to credit Gasbarro's statement that she was "disabled," since it amounts to nothing more than a self-serving legal conclusion. *Venter v. Potter*, 694 F.Supp.2d 412, 424, n. 7 (W.D.Pa. 2010). Nevertheless, her statement that she was unable to "function normally in society" is indicative of a statutory "disability" or "handicap." While such a vague statement may not alone be sufficient to defeat a motion for summary judgment under ordinary circumstances, it is merely one factor weighing against the Defendants' motions for summary judgment in the present case.[17]

In the FHA context, the issue of "handicap" is sometimes examined not only by reference to the characteristics of the *individuals* in question, but also by reference to the criteria for admission to the *facility* at issue. In other words, an individual can sometimes establish that he or she is "handicapped" within the meaning of the FHA simply by demonstrating that he or she resides in a facility that only admits "handicapped" individuals. *Regional Economic Community Action Program, Inc.*, 294 F.3d at 47-48 (relying on New York's admission criteria to determine that recovering alcoholics residing in a "halfway house" were statutorily "handicapped" and "disabled"); *Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1010 (3d Cir. 1995)(observing that "no one would be able to meet a nursing home's admissions requirements

---

[17] The Defendants raise their argument concerning the alleged inability of the Plaintiffs to establish the "handicapped" or "disabled" status of their tenants in a brief opposing the Plaintiffs' motion for partial summary judgment. ECF No. 53 at 4-6. The Defendants do not specifically raise this argument in support of their own motions for summary judgment. ECF No. 39. Although it is unclear whether the Defendants believe that they are entitled to summary judgment with respect to this issue, or whether they are raising it only as a basis for opposing the Plaintiffs' motion for partial summary judgment, the Court finds it appropriate to address the matter comprehensively.

in the absence of some handicapping condition necessitating nursing home care"). Mr. McKivitz testified that each of the individuals residing in the "three-quarter house" had been referred to him by the Allegheny County Adult Probation Office ("Probation Office"), and that each of them had previously been residing in a "halfway house." ECF No. 40-1 at 33-35. These individuals had apparently been referred to Mr. McKivitz precisely because of their inability to live independently. The United States Court of Appeals for the Third Circuit has recognized that "recovering alcoholics and drug addicts" can sometimes qualify as "handicapped" individuals under the FHA, provided that they are not "currently" using illegal drugs. *Lakeside Resort Enterprises, LP v. Board of Supervisors of Palmyra Township*, 455 F.3d 154, 156, n. 5 (3d Cir. 2006).

The record does not contain detailed information about the criteria used by the Probation Office to determine whether a recovering alcoholic or drug addict was capable of living independently. In any event, however, the Board considered the residents of the Plaintiffs' facility to be "handicapped" when it issued its decision affirming Savatt's prior determination that the facility was not being operated in compliance with Ordinance No. 912. The Board emphasized the word "handicapped," as it appeared in Stowe Township's definition of the term "group residence," in determining that the Plaintiffs' facility was to be regarded as a "group residence" rather than as a single-family dwelling. ECF No. 40-3 at 20-22. The Court also notes that, during the course of the hearing, the Board prevented the Plaintiffs' counsel from eliciting testimonial evidence about the particular characteristics and limitations of the individuals residing in the facility. ECF No. 40-2 at 74-75. The transcript of the hearing indicates that the relevant Stowe Township authorities opted not to contest the Plaintiffs' assertion that the individuals residing in the "three-quarter house" were "handicapped." *Id.* Having considered these individuals to be "handicapped" throughout the course of the administrative proceedings, the Defendants cannot turn around and now claim that, *as a matter of law*, these same individuals were not "handicapped."[18] For these reasons, the Court's analysis will proceed on the

---

[18] The Court does not mean to suggest that the doctrine of judicial estoppel bars the Defendants from asserting that the residents of the Plaintiffs' facility were not "handicapped" or "disabled." Judicial estoppel is appropriate only where it can be shown that a party has adopted inconsistent positions in "bad faith." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003). No finding of "bad faith" is warranted in this case. Nevertheless, the Defendants' argument concerning this issue is severely undermined by the fact that the Board considered the residents of the facility to be "handicapped" and "disabled" during the course of the administrative proceedings. ECF No. 40-3 at 20-22. This factor, when combined with Mr. McKivitz's testimony

assumption that the Plaintiffs' tenants were "handicapped" within the meaning of the FHA and "disabled" within the meaning of the Rehabilitation Act and the ADA.

**6.      The "Reasonable Accommodation" Claims**

Statutory claims brought against zoning authorities under the FHA, the Rehabilitation Act and the ADA may proceed under a "disparate treatment," "disparate impact" or "reasonable accommodation" theory. *Sharpvisions, Inc. v. Borough of Plum*, 475 F.Supp.2d 514, 522 (W.D.Pa. 2007). In their latest brief, the Plaintiffs clearly state that they wish to proceed against the Defendants only pursuant to a "reasonable accommodation" theory, and that they have no reason to respond to the Defendants' arguments concerning the "disparate treatment" and "disparate impact" theories. ECF No. 50 at 9. In accordance with this representation, the Court will consider the Plaintiffs' statutory claims to be only "reasonable accommodation" claims. The FHA, the Rehabilitation Act and the ADA are all applicable to zoning decisions. *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 150-151 (2d Cir. 1999). Since the governing standards are essentially the same under these three statutes, it is appropriate for the Court to address all of the Plaintiffs' "reasonable accommodation" claims in accordance with the requirements of the FHA. *Dr. Gertrude A. Barber Center, Inc.*, 273 F.Supp.2d at 652.

Under the FHA, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling," constitutes illicit "discrimination." 42 U.S.C. § 3604(f)(3)(B). Consequently, an accommodation is statutorily required when it is both *reasonable* and *necessary* to provide handicapped individuals with an *equal* opportunity to use and enjoy housing. *Community Services, Inc. v. Wind Gap Municipal Authority*, 421 F.3d 170, 184, n. 12 (3d Cir. 2005). In *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1103 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit held that, in a "reasonable accommodation" case of this kind, "the burden of proving that a proposed accommodation is not reasonable rests with the defendant." Five and a half years later, in *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment*, 284 F.3d 442, 457 (3d Cir. 2002), the Court of Appeals clarified that when a claim is brought pursuant to § 3604(f)(3)(B), "the plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal

---

and the statements contained in Gasbarro's affidavit, is sufficient to create a genuine factual dispute as to whether the Plaintiffs' tenants were "handicapped" or "disabled."

opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable."

In order to satisfy his or her initial burden under § 3604(f)(3)(B), a plaintiff must, at a minimum, demonstrate that the proposed accommodations will "affirmatively enhance" a handicapped person's quality of life "by ameliorating the effects of [his or her] disability." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). In *Bryant Woods Inn, Inc.*, the United States Court of Appeals for the Fourth Circuit explained:

> The necessary element—the FHA provision mandating reasonable accommodations which are *necessary* to afford an equal opportunity—requires the demonstration of a direct linkage between the proposed accommodation and the "equal opportunity" to be provided to a handicapped person. This requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be "necessary." *See Bronk*, 54 F.3d at 429.
>
> And finally, the "equal opportunity" requirement mandates not only the level of benefit that must be sought by a reasonable accommodation but also provides a limitation on what is required. The FHA does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap. As the Court in [*Southeastern Community College v.*] *Davis* [442 U.S. 397, 410-411, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)] noted, the requirement of even-handed treatment of handicapped persons does not include affirmative action by which handicapped persons would have a greater opportunity than nonhandicapped persons. *Davis*, 442 U.S. at 410-11. Congress only prescribed an equal opportunity. *See* 42 U.S.C. § 3604(f)(3)(B).

*Bryant Woods Inn, Inc.*, 124 F.3d at 604 (emphasis in original). Following this line of reasoning, the United States Court of Appeals for the Third Circuit has held that a plaintiff proceeding under § 3604(f)(3)(B) must establish a nexus between "the reasonable accommodations that he or she is requesting" and "their necessity for providing handicapped individuals [with] an 'equal opportunity' to use and enjoy housing." *Lapid-Laurel, L.L.C.*, 284 F.3d at 459. If the plaintiff makes this showing in the zoning context, the burden shifts to the defendant to prove that the proposed accommodations would place undue financial or administrative burdens on the relevant governmental entity, impose an undue hardship on that entity, or require a fundamental alteration of the applicable zoning scheme. *Hovsons, Inc.*, 89 F.3d at 1104; *Sharpvisions, Inc.*, 475 F.Supp.2d at 526.

The Plaintiffs argue that Ordinance No. 912, as construed and applied by the Defendants, essentially denied to the residents of the "three-quarter house" the ability to live in an R-1 district. ECF No. 50 at 10. The Plaintiffs contend that individuals who are unable to live independently cannot live in *this particular residential neighborhood* without the requested accommodations. *Id.* The Defendants respond by pointing out that recovering alcoholics and drug addicts can reside in a "three-quarter house" located in an R-2, R-3 or RC-2 district. ECF No. 53 at 9-10.

It is clear that, under the FHA, "reasonable accommodations" are required where "necessary to afford [a handicapped] person equal opportunity to use and enjoy *a dwelling*." 42 U.S.C. § 3604(f)(3)(B)(emphasis added). The critical question is whether the phrase "a dwelling" refers to a *particular* dwelling of one's own choosing, or whether it refers generically to any dwelling located within a zoning authority's territorial jurisdiction. This issue has divided federal courts that have applied § 3604(f)(3)(B) in the zoning context. See *United States v. City of Chicago Heights*, 161 F.Supp.2d 819, 841 (N.D.Ill. 2001)(favoring a construction of the FHA protecting "disabled persons' right to live in the dwelling of their choice, not some property within the community"); *Connecticut Hospital v. City of New London*, 129 F.Supp.2d 123, 130 (D.Conn. 2001)(stating that "reasonable accommodations must be made to allow a handicapped individual to use a particular dwelling"); and *Oxford House, Inc. v. Town of Babylon*, 819 F.Supp. 1179, 1185, n. 10 (E.D.N.Y. 1993)(construing § 3604(f)(3)(B) to mean that "a handicapped individual must be allowed to enjoy a *particular* dwelling, not just some dwelling somewhere in the town")(emphasis in original); see also *Bryant Woods Inn, Inc. v. Howard County*, 911 F.Supp. 918, 946 (D.Md. 1996)(construing the FHA to prohibit local governments "from applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities").

It is beyond dispute that Ordinance No. 912, as construed and applied in this case, had the effect of preventing the residents of the Plaintiffs' "three-quarter house" from living in that specific facility. There is language in *Hovsons, Inc.*, which could be interpreted to mean that "a dwelling," as used in § 3604(f)(3)(B), means a *particular* dwelling of the relevant handicapped person's own choosing. *Hovsons, Inc.*, 89 F.3d at 1105. Nevertheless, in *Lapid-Laurel, L.L.C.*,

the Court of Appeals declared that the "equal opportunity to use and enjoy a dwelling" mandated by the FHA is essentially "the opportunity for handicapped persons to live in a single-family residential neighborhood." *Lapid-Laurel, L.L.C.*, 284 F.3d at 460. The Court of Appeals had previously observed, in *Hovsons, Inc.*, that Congress' purpose for enacting the FHA and extending FHA protection to handicapped persons was to ensure that such persons were not excluded from the American mainstream. *Hovsons, Inc.*, 89 F.3d at 1105. Given this understanding, zoning authorities are not permitted to leave handicapped individuals with no alternative other than to live outside of a residential area. *Lapid-Laurel, L.L.C.*, 284 F.3d at 460. It does not follow, however, that the FHA provides handicapped individuals with the prerogative to live in a *particular* home of his or her choosing, regardless of the applicable zoning regulations. That is evident from the following language in *Lapid-Laurel, L.L.C.*:

> With respect to the use variance, it is clear that Lapid demonstrated that a use variance was necessary to achieve an equal opportunity for the elderly handicapped to live in *a residential area* of Scotch Plains. This is true almost by definition. The elderly handicapped who need skilled nursing care usually are not able to live in their own houses. They must live in some sort of institutional setting in order to receive the assistance or health care that they need. No institutional health care facilities are permitted without a use variance in the neighborhoods zoned R-1 residential in Scotch Plains. Therefore, a use variance is necessary for the elderly handicapped to have an equal opportunity to live in *a residential area* of Scotch Plains.

*Lapid-Laurel, L.L.C.*, 284 F.3d at 460. The use of the phrase "a residential area" by the Court of Appeals indicates that while the FHA requires that handicapped individuals be given the opportunity to live in an area that is generally reserved for single-family housing, it does not require that they be afforded the right to live in a *specific facility* in such an area. Consequently, the Court construes the phrase "a dwelling," when employed in the zoning context, to mean a generic dwelling located in a residential area rather than a specific dwelling of a particular handicapped individual's own choosing. *Dr. Gertrude A. Barber Center, Inc.*, 273 F.Supp.2d at 653; *Bryant Woods Inn, Inc.*, 911 F.Supp. at 945-946.

The Court acknowledges that the phrase "a dwelling," when applied in a case involving an individual landlord, refers to the specific "dwelling" at issue. *Giebeler v. M&B Associates*, 343 F.3d 1143, 1146-1147 (9th Cir. 2003). Under ordinary circumstances, "the same language in a single statutory provision cannot have two different meanings." *Johnson v. McNeil*, 217 F.3d

298, 301 (5th Cir. 2000). In this context, however, the phrase "a dwelling" cannot be divorced from the remainder of the subsection of which it is a part. Both landlords and zoning authorities are required "to make reasonable accommodations in rules, policies, practices, or services" where necessary to afford handicapped individuals an *equal* opportunity "to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Landlords and zoning authorities, however, are not similarly situated in any other respect. An individual landlord is merely a market *participant* seeking to apply "rules" and "policies" to his or her own property, whereas a zoning authority is a market *regulator* entrusted with the duty to implement "rules" and "policies" applicable to an entire community.[19] Where a generally-applicable zoning regulation is the "rule" or "policy" at issue, the phrase "a dwelling" must be read through the prism of the community as a whole. *Bryant Woods Inn, Inc.*, 124 F.3d at 605 (holding that a facility's request to increase its housing capacity from eight to fifteen residents was not "necessary" to accommodate handicapped individuals because the large vacancy rates at other facilities in the community provided such individuals with alternative housing options). This interpretation of the statutory language is consistent with the FHA's purpose of ending "the exclusion of handicapped individuals from the American mainstream" by according them the right "to live in single-family neighborhoods." *Smith & Lee Associates, Inc. v. City of Taylor*, 102 F.3d 781, 794-795 (6th Cir. 1996). The alternative interpretation "would give handicapped persons carte blanche to determine where and how they would live regardless of zoning ordinances to the contrary." *Thornton v. City of Allegan*, 863 F.Supp. 504, 510 (W.D.Mich. 1993).

Under Ordinance No. 912, "group residences" are allowed as a "conditional use" in R-2 and R-3 districts and as a "permitted use" in RC-2 districts. ECF No. 40-1 at 11, 13-14, 19. Single-family dwellings are permitted in each type of district. *Id.* The Plaintiffs have presented no evidence concerning the availability (or unavailability) of group residences in Stowe Township, nor have they attempted to establish that, as a practical matter, no single-family

---

[19] The Supreme Court's dormant Commerce Clause jurisprudence recognizes that a State may act as a "market participant" rather than as a "market regulator," in which case the State is free to favor its own businesses over those located in other jurisdictions. *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 93, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984)("Our cases make clear that if a State is acting as a market participant, rather than as a market regulator, the dormant Commerce Clause places no limitation on its activities."). Although the application of the dormant Commerce Clause cannot be easily analogized to the application of the FHA in most respects, the Court finds the distinction between "market participants" and "market regulators" to be instructive in the present context. Because a zoning authority *regulates* an entire housing market, it cannot be easily compared to an individual landlord who merely *participates* in that housing market.

dwellings are located in R-2, R-3 and RC-2 districts.  The Plaintiffs base their entire case on the unavailability of "group residences" in a single residential area of Stowe Township that happens to be zoned as an R-1 district.  ECF No. 50 at 10.  In order to shift the burden of proving "unreasonableness" to the Defendants, the Plaintiffs must establish a nexus between the proposed accommodations and their necessity for providing handicapped individuals with an equal opportunity to live in *a residential area* of Stowe Township.  *Lapid-Laurel, L.L.C.*, 284 F.3d at 459-460.  It does not suffice for them to show that the proposed accommodations are needed to enable handicapped individuals to live in a *specific* facility located within a *particular* residential district.  Because the Plaintiffs have failed to satisfy their initial burden of showing that "reasonable accommodations" are necessary to provide handicapped individuals with an "equal opportunity to use and enjoy a dwelling," the burden of demonstrating that the requested accommodations are "unreasonable" does not shift to the Defendants.  42 U.S.C. § 3604(f)(3)(B); *Lapid-Laurel, L.L.C.*, 284 F.3d at 459.

Instead of focusing on their own evidentiary burden, the Plaintiffs argue that the Defendants have not satisfied their burden of establishing the "unreasonableness" of the proposed accommodations.  ECF No. 50 at 10-12.  The Defendants argue that the accommodations requested by the Plaintiffs were "unreasonable" because they would have resulted in a fundamental alteration of Stowe Township's zoning scheme.  ECF No. 53 at 10.  The crux of the Defendants' argument is that permitting a "three-quarter house" to exist in an R-1 district would have turned that district into a "transitory living area."  *Id.*  This contention is unpersuasive.  Savatt testified that he had deemed the facility to be a "group residence" rather than a single-family dwelling only because the residents had been paying rent on an individual basis rather than on a collective basis.  ECF No. 52-2 at 14-16, 20-21, 26.  He apparently would have considered the facility to be a single-family dwelling if the residents had been making collective rent payments.  *Id.*  If the "three-quarter house" would have been permissible in an R-1 district had the residents been paying rent on a collective basis, it is difficult to fathom how the granting of a variance in this case would have fundamentally altered Stowe Township's zoning scheme.  Howard Duerr ("Duerr"), the President of Stowe Township's Board of Commissioners, testified on October 8, 2009, that the Plaintiffs' use of the facility as a "three-quarter house" during the relevant period of time had not caused Stowe Township to incur additional financial or administrative obligations.  ECF No. 52 at 26.  Ronald Virgin ("Virgin"), the Chairman of the

Board, testified that Stowe Township would not have incurred an undue financial burden had the Plaintiffs been permitted to operate their facility as a "three-quarter house." ECF No. 52-3 at 25. Therefore, the Defendants would not have been able to meet their burden of establishing the "unreasonableness" of the requested accommodations had the Plaintiffs satisfied their initial burden of demonstrating the necessity of those accommodations to provide handicapped individuals with an equal opportunity to live in a residential area of Stowe Township. Relying on a local zoning ordinance, the Board proceeded on the assumption that the Plaintiffs had the burden of proving that a variance permitting the facility to be used as a "three-quarter house" would not have altered "the essential character of the neighborhood." ECF No. 40-3 at 21. In the FHA context, however, the burden of proving that a particular accommodation will result in a fundamental alteration of the applicable zoning scheme rests with the defendant. *Hovsons, Inc.*, 89 F.3d at 1104. In any event, the Defendants' failure to satisfy their hypothetical burden of proving the "unreasonableness" of the proposed accommodations is inconsequential in this case, since the Plaintiffs have failed to satisfy their initial burden under § 3604(f)(3)(B). *Lapid-Laurel, L.L.C.*, 284 F.3d at 457.

In order for a facility to constitute a "group residence" under Ordinance No. 912, the individuals residing therein "must be living together as a single housekeeping unit with one or more adults providing qualified, 24-hour supervision." ECF No. 40-1 at 7. In determining that the Plaintiffs' facility was a "group residence" rather than a single-family dwelling, the Board stated:

> The House Manager resides in the second bedroom and she pays less rent to McKivitz than the other occupants, and offers "24 hour supervision" to the other girls, which is required "by the County."

ECF No. 40-3 at 19. The Plaintiffs argue that this statement by the Board constituted a mischaracterization of the testimonial record, since Gasbarro had described her duties as being limited to the collection of urine samples from the residents for the purpose of ensuring that they were not actively abusing drugs or alcohol. ECF No. 29 at 7; ECF No. 40-2 at 73. Nevertheless, the Board's statement appears to have been based on the following colloquy between Stowe Township's solicitor and Mr. McKivitz:

Q.      Now, where does the house manager live?

A.      She lives in one bedroom.

Q.      Okay.  And then the other girls then live in the other bedroom?

A.      Yes.

Q.      Does the house manager perform any duties like preparing any meals, shopping?

A.      All the girls do (inaudible).

Q.      Is the house manager hired by you or by some outside agency?

A.      I hired her.

Q.      Was that required by the county or it [sic] had a permit?

A.      Well, we always got—our house as a house always—our house has a house manager.  You've got to have someone there.

Q.      Around the clock?

A.      Yeah.  Show some authority.

Q.      How often do you get to the house [sic] would you say?

A.      I'm there every day.  I stop once a day.

ECF No. 40-2 at 36.  The Plaintiffs apparently believe that the Board overstated the import of Mr. McKivitz's testimony in determining that the residents of the "three-quarter house" were "living together as a single housekeeping unit with one or more adults providing qualified, 24-hour supervision."  ECF No. 40-1 at 6-7.

While the Plaintiffs' argument may have some force as a factual matter, it has no bearing on their claims under the FHA, the Rehabilitation Act and the ADA.  In their latest brief, the Plaintiffs clearly state that they are asserting statutory claims solely on a "reasonable accommodation" theory, eschewing reliance on the alternative "disparate treatment" and "disparate impact" theories.  ECF No. 50 at 9.  A claim based on a governmental entity's alleged "refusal to make reasonable accommodations" with respect to "rules" and "policies" proceeds on the assumption that such "rules" and "policies" were properly applied as a matter of state or local law, and that they are "invalid" because of their inconsistency with federal law.  42 U.S.C. §§ 3604(f)(3)(B), 3615; *Regional Economic Community Action Program, Inc.*, 294 F.3d at 53

("Because the plaintiffs do not point to the prerequisite neutral application of a rule, they fail to state a claim under a reasonable accommodation theory.").  To the extent that the Plaintiffs believe that the Board misconstrued or misapplied Ordinance No. 912 as a matter of state or local law, they remain free to pursue the avenues of relief available to them under Pennsylvania law.  *Lapid-Laurel, L.L.C.*, 284 F.3d at 454, n. 6.  As far as the Court can tell, the appeal that the Plaintiffs filed in the Court of Common Pleas is still pending.  ECF No. 40-3 at 23-28.  Even if the Plaintiffs can establish that the Board's decision was erroneous as a matter of Pennsylvania law, their evidentiary submissions in this case are insufficient to establish actionable violations of the FHA, the Rehabilitation Act and the ADA.  Accordingly, the Court will grant the Defendants' motions for summary judgment, and deny the Plaintiffs' motion for partial summary judgment, with respect to the claims under the FHA, the Rehabilitation Act and the ADA.

**B.**      **The Federal Constitutional Claims**

The Plaintiffs bring their federal constitutional claims against the Defendants pursuant to 42 U.S.C. § 1983.  ECF No. 1 at ¶¶ 97-102.  That statutory provision provides:

> **§ 1983.  Civil action for deprivation of rights**
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  Section 1983 "does not create substantive rights," but instead "provides a remedy for the violation of rights conferred by the Constitution or other statutes."  *Maher v. Gagne*, 448 U.S. 122, 129, n. 11, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).  A plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federal right.  *Collins v. City of Harker Heights*, 503 U.S. 115, 119, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).  Moreover, § 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right."  *Board of County Commissioners*

*v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)(internal quotation marks omitted).

In evaluating the Plaintiffs' claims under § 1983, the Court must "identify the exact contours of the underlying right[s] said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The constitutional rights invoked by the Plaintiffs are grounded in § 1 of the Fourteenth Amendment, which provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., AMEND. XIV, § 1. The Plaintiffs assert claims under both the Equal Protection Clause and the Due Process Clause. ECF No. 1 at ¶¶ 97-102.

### 1.    The Equal Protection Clause Claims

The parties in this case apparently share the misguided understanding that the Plaintiffs' claims under the Equal Protection Clause are governed by the same standards as those applicable to the claims under the FHA, the Rehabilitation Act and the ADA. In their briefs, the parties do not specifically address the requirements of the Equal Protection Clause. Instead, they assume that the claims arising under the Equal Protection Clause are adequately addressed by reference to their arguments concerning the statutory claims. ECF No. 39 at 12; ECF No. 50 at 9; ECF No. 53 at 4-7. To the extent that the parties believe that the Equal Protection Clause provides the same degree of protection as the FHA, the Rehabilitation Act and the ADA, they are manifestly incorrect.

As an initial matter, an individual is entitled to *constitutional* protection under the Equal Protection Clause regardless of whether he or she is "handicapped" within the meaning of the FHA or "disabled" within the meaning of the Rehabilitation Act and the ADA. The meaning of a *constitutional* provision enacted in 1868 cannot be determined by reference to *statutory* definitions enacted more than a century later. Furthermore, a plaintiff need not allege "class-based discrimination" in order to state a claim under the Equal Protection Clause. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). The Equal Protection Clause protects each *person* within a State's jurisdiction (*i.e.*, a "class of

one") from arbitrary or irrational discrimination. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). The Court has already determined that, at least for summary judgment purposes, the Plaintiffs' tenants were statutorily "handicapped" and "disabled" during the relevant period of time. That determination, however, is irrelevant to the application of the Equal Protection Clause. To the extent that the Defendants believe that an individual must meet a statutory definition of "handicap" or "disability" to assert handicap- or disability-based discrimination claims under the Equal Protection Clause, they are mistaken. ECF No. 53 at 4-6.

The Plaintiffs likewise fail to comprehend the requirements of the Equal Protection Clause. As noted earlier, the Plaintiffs purport to rely solely on a "reasonable accommodation" theory of "discrimination," and not on a more concrete "disparate treatment" theory. ECF No. 50 at 9. In so doing, they make no distinction between their statutory claims and their constitutional claims. *Id.* The problem with this approach is that the Fourteenth Amendment does not affirmatively require state and local entities to "accommodate" the needs of "handicapped" or "disabled" individuals. *Board of Trustees v. Garrett*, 531 U.S. 356, 367-368, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Since classifications based on "handicap" or "disability" are neither "suspect" nor "quasi-suspect" under the Supreme Court's jurisprudence, discrimination against "handicapped" or "disabled" individuals runs afoul of the Equal Protection Clause only where it is arbitrary or irrational. *Id.* at 365-368. The requirements of the Equal Protection Clause do not mirror the "reasonable accommodation" mandates of the FHA, the Rehabilitation Act and the ADA. *Id.* at 368 ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.")(footnote omitted). The Fourteenth Amendment, of course, limits both the permissible scope of legislative enactments and the ability of governmental officials to perpetrate arbitrary or irrational discrimination. *Sunday Lake Iron Co. v. Wakefield*, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)("The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."). A claim under the Equal Protection Clause can sometimes be pursued in the absence of a legislative classification. *Engquist*, 553 U.S. at 597. In the present context, however, such a claim can succeed only upon a showing that the handicap- or disability-

based discrimination alleged to have occurred was truly irrational. *Garrett*, 531 U.S. at 366-368 (referring to isolated personnel decisions made by governmental employers); *Heller v. Doe*, 509 U.S. 312, 319-321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)(addressing a legislative classification).

In *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the Supreme Court determined that a local entity had violated the Equal Protection Clause by denying a special-use permit that had been requested by an entity seeking to operate a group home for mentally retarded persons. The local ordinance at issue in that case had required only those seeking to run group homes for mentally retarded individuals to obtain special-use permits, without imposing a similar requirement on those seeking to establish apartment houses, multiple dwellings, boarding and lodging houses, fraternity or sorority houses, dormitories, apartment hotels, hospitals, sanitariums, nursing homes, private clubs and fraternal orders. *City of Cleburne*, 473 U.S. at 447-448. Speaking through Justice White, the Supreme Court declared that "mere negative attitudes[] or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding, are not permissible bases for treating a home for the mentally retarded differently from apartment houses, multiple dwellings, and the like." *Id.* at 448. The Supreme Court went on to state that the local entity's permit requirement had rested solely on an "irrational prejudice" against mentally retarded persons, thereby rendering the ordinance unconstitutional as applied in that case. *Id.* at 450.

The present case is clearly distinguishable from *City of Cleburne*. The Defendants' decision to deny Plaintiffs permission to operate their facility as a "three-quarter house" was based on a generally-applicable zoning ordinance rather than on an ordinance which specifically targeted recovering alcoholics and drug addicts for disfavored treatment. During the course of his deposition, Savatt attributed his decision to deny the request for a "Certificate of Occupancy" to the Plaintiffs' own characterization of the facility as a "three-quarter house." ECF No. 40-3 at 13; ECF No. 52-2 at 5. When questioned about the matter, Savatt testified as follows:

> Q.    Are you aware that under the Acts you're supposed to make reasonable accommodations for handicapped persons?
>
> A.    Persons' disabilities had nothing to do with me denying this occupancy.
>
> Q.    So—

A.    If he would have wrote single family dwelling for disabled individuals, I would have signed it, and that would have been the end of it.  He did not.  He wrote three quarter house.  Three quarters isn't single family, it's three quarter?

Q.    It's three quarters of a family?

A.    It's a three quarters house.  There is no definition.  I asked you if there was a State definition, you said you wouldn't answer my question.  What's the definition?  What is the definition of a three quarter house?  I've never seen a definition of a three quarter house.  So I use my best judgment to make my determination, and I denied the occupancy, based on his putting the three quarter house.  I see nowhere permitting it or denying it.  I used my best judgment.

ECF No. 52-2 at 5.  The Board construed Ordinance No. 912 in a similar manner when it affirmed Savatt's decision.  ECF No. 40-3 at 17-22.

In *City of Cleburne*, the local entity's decision to deny the request for a special-use permit was deemed to be unconstitutional for two reasons.  First, the applicable ordinance *facially* discriminated against mentally retarded persons by singling out their housing facilities for disfavored treatment.  *City of Cleburne*, 473 U.S. at 447-448.  "[A] classification of persons undertaken for its own sake" is something that "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).  Second, the reasons for the denial put forth *by the local entity itself* were not rationally related to a legitimate governmental interest.  *City of Cleburne*, 473 U.S. at 448-450.  Instead, those reasons were based entirely on irrational assumptions about mentally retarded individuals.  *Id.* at 448-449.  Neither infirmity is present in this case.  Because the Defendants' decision to deny Plaintiffs' request for permission to operate a "three-quarter house" in an R-1 district of Stowe Township was based on a reasonable construction of a facially-neutral zoning ordinance, the Plaintiffs cannot establish a violation of the Equal Protection Clause.[20]  *Frazier v. City of Grand Ledge*, 135 F.Supp.2d 845,

---

[20] When a legislative classification is attacked on the ground that it is not rationally related to a legitimate governmental interest, it makes no difference whether the reasons for the classification put forth by the government were actually relied upon by the relevant legislative body when the challenged classification was enacted.  *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)(stating that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature").  Although it is not entirely clear whether this principle applies where a claim under the Equal Protection Clause is based on an isolated allegation of discrimination rather than on a legislative classification, the Supreme Court's discussion in *Board of Trustees v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), suggests that the principle is applicable to both types of claims.  *Garrett* involved isolated personnel

852 (W.D.Mich. 2001)(observing that "[a]ny rational relationship between dissimilar treatment of [an individual] and a legitimate governmental purpose" will defeat a claim governed by the rational-basis standard). While a governmental entity's asserted interest in complying with a facially-neutral zoning ordinance will not always render its actions lawful under the FHA, the Rehabilitation Act and the ADA, such an interest will almost invariably be sufficient to defeat a claim of *irrational* discrimination under the Equal Protection Clause. *City of Cleburne*, 473 U.S. at 448 (suggesting that "negative attitudes" and "fear" provide irrational justifications for zoning decisions only when they are "unsubstantiated by factors which are properly cognizable in a zoning proceeding"). Consequently, the Defendants' motions for summary judgment will be granted, and the Plaintiffs' motion for partial summary judgment will be denied, with respect to the Plaintiffs' claims under the Equal Protection Clause.

**2.      The Procedural Due Process Claims**

The Plaintiffs seek to advance procedural due process claims based on alleged violations of Pennsylvania statutory provisions. ECF No. 1 at ¶¶ 99-102. The United States Court of Appeals for the Third Circuit has found Pennsylvania's statutory scheme for adjudicating challenges to zoning ordinances to be consistent with the requirements of the Due Process Clause. *Rogin v. Bensalem Township*, 616 F.2d 680, 694-695 (3d Cir. 1980). For this reason, the Plaintiffs concede that no procedural due process violation occurs when zoning authorities comply with the applicable statutory mandates. ECF No. 29 at 17-18; ECF No. 50 at 13. Nevertheless, they argue that the Defendants violated the Due Process Clause in this case by failing to comply with the particular requirements of Pennsylvania law. *Id.*

Under Pennsylvania law, the Board was required to "keep a stenographic record of the proceedings" conducted in this case. 53 PA. STAT. § 10908(7). Instead of having a stenographer present at the hearing, the Board provided for an audio recording of the proceedings so that a transcript could be made at a later date. The Plaintiffs' counsel orally objected to this procedure, but the Board opted to continue the hearing without the presence of a stenographer. ECF No. 40-2 at 8-9. The Plaintiffs contend that their rights under the Due Process Clause were violated

---

decisions rather than legislative classifications, but the Supreme Court still invoked the precept permitting a government to retroactively articulate a "rational basis" for an action that has already been taken. *Garrett*, 531 U.S. at 367 ("Moreover, the State need not articulate its reasoning at the moment a *particular decision* is made.")(emphasis added).

when the Board failed to provide for the physical presence of a stenographer.[21]  ECF No. 50 at 15.

The Plaintiffs cannot establish a violation of the Due Process Clause simply by establishing a violation of a state statute. *Thielman v. Leean*, 140 F.Supp.2d 982, 993 (W.D.Wis. 2001).  "State law may bear upon a claim under the Due Process Clause when the property interests protected by the Fourteenth Amendment are created by state law." *Davis v. Scherer*, 468 U.S. 183, 193, n. 11, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).  Nonetheless, state law governs only to the extent that it defines the property interest at issue.  "While state law may be the source of a property interest entitled to constitutional protection, it does not govern the constitutional analysis concerning the level of process necessary in order to effect a lawful deprivation of that interest."[22]  *Whittaker v. County of Lawrence*, 674 F.Supp.2d 668, 695 (W.D.Pa. 2009).  There is no need for the Court to determine whether the Board's decision to keep a record of the hearing by means of an audio-recording apparatus satisfied its statutory obligation "to keep a stenographic record of the proceedings."  53 PA. STAT. § 10908(7).  The Plaintiffs point to no authority which establishes that the Board was *constitutionally* required to have a stenographer physically present at the hearing.  Consequently, the Board's decision to proceed without a stenographer provides no basis for a procedural due process claim.  *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.").

The Plaintiffs also contend that the Board violated the Due Process Clause by permitting the participation of a member who had previously spoken with Savatt about the case.  ECF No. 50 at 14-15.  They infer from comments made at the hearing by a member of the Board that he had prematurely discussed the matter with Savatt.  ECF No. 40-2 at 79-80.  Such pre-hearing

---

[21] The Plaintiffs also argue that the Board violated 53 PA. STAT. § 10908(4) by failing to provide for the presence of an individual who was authorized to administer oaths.  ECF No. 50 at 15.  This argument does not make sense.  The relevant statutory provision provides that "[t]he chairman or acting chairman of the board or the hearing officer presiding shall have power to administer oaths and issue subpoenas to compel the attendance of witnesses and the production of relevant documents and papers, including witnesses and documents requested by the parties."  53 PA. STAT. § 10908(4).  This statutory language simply provided the Chairman of the Board with the power to administer oaths.  It is not clear how the Plaintiffs believe that this statutory provision was violated.

[22] The Plaintiffs define the property interest at issue as their ability to use their facility "for all lawful purposes." ECF No. 1 at ¶ 100.

34

contact between these two individuals is alleged to have contravened 53 Pa. Stat. § 10908(8), which provides:

> The board or the hearing officer shall not communicate, directly or indirectly, with any party or his representatives in connection with any issue involved except upon notice and opportunity for all parties to participate, shall not take notice of any communication, reports, staff memoranda, or other materials, except advice from their solicitor, unless the parties are afforded an opportunity to contest the material so noticed and shall not inspect the site or its surroundings after the commencement of hearings with any party or his representative unless all parties are given an opportunity to be present.

53 Pa. Stat. § 10908(8). Savatt testified that he had simply informed members of the Board that they would be hearing a case concerning the Plaintiffs' "three-quarter house," which he had determined to be a "group residence." ECF No. 52-2 at 11. The Plaintiffs do not identify the relevant Board member by name. At the hearing, however, they asked that he be removed from the case, and their request was denied. ECF No. 40-2 at 79-80.

As an initial matter, the Pennsylvania Commonwealth Court has construed § 10908(8) to prohibit communications between a zoning board and the parties to a hearing "only after the commencement of the hearing." *In Re: Arnold*, 984 A.2d 1, 8-9 (Pa.Commw.Ct. 2009). Thus, the communications alleged to have occurred between Savatt and a member of the Board did not violate § 10908(8). Even if such communications had violated Pennsylvania law, they would not have been in violation of the Fourteenth Amendment. Most matters relating to judicial disqualification and recusal do not implicate the Due Process Clause. *Caperton v. A.T. Massey Coal Co., Inc.*, ___U.S.___, ___, 129 S.Ct. 2252, 2259, 173 L.Ed.2d 1208 (2009). In *Withrow v. Larkin*, 421 U.S. 35, 56, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court explained that it was "very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings." Speaking through Justice White, the Supreme Court declared that "the combination of investigative and adjudicative functions" does not constitute a due process violation unless "the special facts and circumstances present in the case" create a "risk of unfairness" that is "intolerably high." *Withrow*, 421 U.S. at 58. The Plaintiffs base their claims *solely* on pre-hearing communications between Savatt and a member of the Board, without reference to any surrounding facts or circumstances. ECF No. 50 at 14-15. Because they make no attempt to show that the Board member's participation in this case created

an "intolerably high" "risk of unfairness," the Plaintiffs cannot establish a violation of the Due Process Clause.[23]

The Plaintiffs also claim that Savatt violated their procedural due process rights by filing citations against them in the absence of "probable cause" to believe that they had acted illegally. ECF No. 1 at ¶ 102. The precise basis for this claim is unclear. The initiation of a prosecution without probable cause does not itself constitute a violation of the Due Process Clause. *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998). A plaintiff seeking to proceed under § 1983 pursuant to a "malicious prosecution" theory must allege a "deprivation" of liberty or property in connection with the challenged prosecution.[24] *Lassoff v. New Jersey*, 414 F.Supp.2d 483, 491 (D.N.J. 2006). The Plaintiffs allege that they were deprived of the ability "to use their property . . . for all lawful purposes." ECF No. 1 at ¶ 100. This theory lacks factual support, since the filing of the citations did not *cause* the alleged "deprivation." Some governmental actions have an impact on property interests without effecting *deprivations* of those interests. *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 674, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). The applicable zoning ordinances (as construed and applied by Savatt and the Board in this case) precluded the Plaintiffs from using their property as a "three-quarter house" *before* the citations were filed. The Board's decision left the Plaintiffs unable to use their property as a "three-quarter house" *after* the criminal charges against them had already been dismissed. The Plaintiffs cannot establish a causal relationship between the filing of the citations and their inability to use the property as a "three-quarter house." They define the relevant "deprivation" as their inability to do what a preexisting,

---

[23] Even if the Plaintiffs had presented evidence establishing that the relevant Board member was biased, it would not necessarily follow that they could establish a violation of the Due Process Clause. The Constitution does not require perfection at each and every stage of the adjudicatory process. *Alvin v. Suzuki*, 227 F.3d 107, 119 (3d Cir. 2000). In a case involving an alleged violation of the Due Process Clause, "the availability and validity of any pre-deprivation process must be analyzed with reference to the context of the alleged violation and the adequacy of available post-deprivation procedures." *Reilly v. City of Atlantic City*, 532 F.3d 216, 236 (3d Cir. 2008). Pennsylvania law provides for judicial review of a zoning board's decision, and the Plaintiffs have appealed the Board's decision to the Court of Common Pleas in this very case. 53 PA. STAT. § 11001-A *et seq.*; ECF No. 40-3 at 23-28. The availability of post-deprivation process is especially relevant to the constitutional analysis where no pre-deprivation process is constitutionally required. *Tristani v. Richman*, 609 F.Supp.2d 423, 480-484 (W.D.Pa. 2009). The Court need not consider these issues, since it is clear that the Plaintiffs cannot establish a violation of the Due Process Clause even if it is assumed in this case that no amount of post-deprivation process could cure an otherwise infirm deprivation of the Plaintiffs' property rights. *Id.* at 483.

[24] In the Fourth Amendment context, a plaintiff must show that he or she was "seized" as a result of the challenged prosecution. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). That standard is not applicable to the Plaintiffs' claims, which are categorized as procedural due process claims rather than Fourth Amendment claims. ECF No. 1 at ¶¶ 99-102.

generally-applicable zoning ordinance had already precluded them from doing. A generalized inability to do what is legally prohibited cannot be fairly characterized as a constitutionally-protected liberty or property interest. As the United States Court of Appeals for the Third Circuit explained in *Rogin v. Bensalem Township*, 616 F.2d 680, 694 (3d Cir. 1980), "the general theory of republican government is not due process through individual hearings and the application of standards of behavior, but through elective representation, partisan politics, and the ultimate sovereignty of the people to vote out of office those legislators who are unfaithful to the public will." An individual cannot evade a legislative prohibition by characterizing his or her inability to do what is prohibited as a "deprivation" of his or her "liberty" to do what is prohibited. Since the Plaintiffs do not properly allege that they were deprived of a constitutionally-protected liberty or property interest, they cannot establish a violation of the Fourteenth Amendment even if it is assumed that Savatt did not have "probable cause" to believe that they had acted illegally.[25] Summary judgment will be entered in favor of the Defendants, and against the Plaintiffs, with respect to all of the claims arising under the Fourteenth Amendment.[26]

## C.      The State Constitutional Claims

The Plaintiffs contend that the Defendants' actions in this case were in violation of Article 1, § 26, of the Pennsylvania Constitution. ECF No. 1 at ¶¶ 103-105. That provision provides that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST., ART. 1, § 26. The Court has supplemental jurisdiction over the Plaintiffs' state constitutional claims pursuant to 28 U.S.C. § 1367(a). Nevertheless, § 1367(c)(3) permits a federal court to decline to exercise supplemental jurisdiction over state claims under circumstances in which it "has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Since the Court has determined that the Plaintiffs' federal claims should be dismissed, supplemental jurisdiction over their state constitutional

---

[25] The Plaintiffs do not explain the standards applicable to the underlying criminal charges, so it is not possible for the Court to examine the issue of "probable cause" in any event. ECF No. 50 at 15-16.

[26] In their brief, the Plaintiffs purport to rely on substantive due process theories that are not referenced in their complaint. ECF No. 29 at 19-20. The Court need not consider the arguments advanced in that portion of the Plaintiffs' brief, since the presentation of a new argument in a brief does not constitute an amendment to the complaint. *HFGL Ltd. v. Alex Lyon & Son Sales Managers & Auctioneers, Inc.*, 700 F.Supp.2d 681, 683, n. 7 (D.N.J. 2010). Even if the Plaintiffs had included substantive due process claims in their complaint, it is doubtful that such claims would have been viable under the circumstances of this case. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(remarking that "only the most egregious official conduct" can give rise to a substantive due process claim).

claims will be declined.  Pursuant to § 1367(d), the Plaintiffs will have thirty (30) days to refile their state constitutional claims in a Pennsylvania state court.  *Pitchford v. Borough of Munhall*, 631 F.Supp.2d 636, 661-662 (W.D.Pa. 2007).  The Court expresses no opinion as to whether the actions of the Defendants were in violation of Pennsylvania law.

## V.    <u>Conclusion</u>

For the foregoing reasons, the motions for summary judgment filed by the Defendants (*Document Nos. 38 & 41*) will be granted, and the motion for partial summary judgment filed by the Plaintiffs (*Document No. 28*) will be denied.  The Court will decline to exercise supplemental jurisdiction over the Plaintiffs' state constitutional claims, which may be refiled in a Pennsylvania state court in accordance with § 1367(d).  No opinion is expressed as to whether the actions of the Defendants were in compliance with Pennsylvania law.  If the Plaintiffs believe that the Board's decision should be reversed on the ground that it was based on a misapplication of state or local law, they remain free to pursue their appeal in the Court of Common Pleas of Allegheny County.  *Lapid-Laurel, L.L.C.*, 284 F.3d at 454, n. 6.  The Court holds only that the Plaintiffs have not established violations of the FHA, the Rehabilitation Act, the ADA, and the Fourteenth Amendment.  An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEANNE McKIVITZ and ROBERT McKIVITZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1247 |
| | ) | |
| TOWNSHIP OF STOWE, TOWNSHIP OF STOWE ZONING BOARD OF ADJUSTMENT, and WILLIAM J. SAVATT, individually and as the Stowe Township Code Enforcement Officer, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, this 22nd day of December, 2010, in accordance with the foregoing memorandum opinion, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the Plaintiffs' Motion for Partial Summary Judgment (*Document No. 28*) is **DENIED**, and that the Defendants' Motions for Summary Judgment (*Document Nos. 38 & 41*) are **GRANTED**. In accordance with 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the claims asserted by the Plaintiffs under Article 1, § 26, of the Pennsylvania Constitution.

s/ Terrence F. McVerry
Terrence F. McVerry
United States District Judge

cc:     All counsel of record